Thank you, Mr. Court. Good morning. My name is Richard Torn. I represent the defendant, Beth Kellins, v. Jessica Soderling, being a co-defendant. So if we could just spend our time in the room right now, between your five minutes and the rest of the time to go ahead and testify. I apologize in advance. We'll see you again when we come to ten minutes. I apologize. Thank you. Your Honor, so after the Caldwell case, this court has defined that there's no deceitful or dishonest conduct, because conspiring to make the government's job harder without war is not a crime in this case. It has been to the court that all the evidence that was submitted in the district court against compliance lacked the sowing of deceitful or dishonest conduct, which we do with regard to the timing of the opening of the personal bank account by Ms. Jessica Soderling. Is that your client? It was my client's, Your Honor. It was six days after I did notice my IRS garnished the corporate business account, and she opens a personal account and starts running a call to the corporate defense agency and kind of put a one-minus band-aid on itself, given the timing, since they should have been established. Why do you think that's the case? Because, Professors, there's nothing illegal, dishonest, or deceitful about it. She had no obligation under the Murphy case to tell the IRS that she was opening a new account, meaning that she was transferring money into the account. There's nothing illegal about it, Your Honor. There was no embezzlement coming from the fact that the jury has permanently defined it as a result of a visit to Tulsa, Illinois, that occurred in 2005, three years earlier, and she knew that there were outstanding tax liabilities. The jury could infer that she also knew that the IRS was garnishing the business's accounts under satisfying its liabilities, and if you basically waited at the high names of the assets of the taxpayer company to meet those obligations, why, that's not exactly what I would call the innocuous conduct, but there's nothing deceitful or dishonest about it. She used her name, she used her Social Security number, she used the address, but that's not the kind of woman I help with, so I guess that's my tradition in the civil sense, and they started writing quick claim deeds and transferring all their assets to the spouse, or to their cousin, or their brother, I mean, that's still a fraudulent transfer in order to keep the potential creditors. It may be in the civil context. It may be in the civil context. In the criminal context, we require more than that. Okay, I understand it's a question of the power of the law, but we're still talking about the intent to defraud, or in this case, hiding assets from garnishment. Hiding assets alone, you know, or without something fraudulent, deceitful, or dishonest, is not under a default location. What do we do with disabled vacations to Hawaii? Oh yeah, the freight program, right? I'm sorry, they bought a Viper, I think that's what it's called, and it's Mexico, right? I think it's ironic that they bought a Viper, but, you know, it's like a little clown. We had a vacation, this was in 2005, before the charge of conspiracy in this case, and also the Dodge Viper was not seen as a punishing actor, but as a crime of record in nature, and I think that's a concern. That's not what we're talking about. Well, that certainly tells me that this was in February, and that that was a crime of record. That's not what we're talking about. I think that's what you mentioned. But my point is, is that there has to be some activity in a crucial context to explore the case, and not just making the government's job more difficult. I don't mean to try to seize this, but I don't know what to do for now. Obviously, it's all in the circumstance, but I don't want to throw this in front of the jury, but that would not be sufficient as a way to remove the jury to come to the court. It's just a complicated activity. Well, because deceitful and deceptive is more than just what is in her mind. The effect of what she did may have had the effect to conceal a hideousness from the accuracy. That's not a client conspiracy claim, which is classically treated as conspiracy to obstruct the operation from the federal agency. It speaks to certainly the influence of the internal evidence that was to collect on the dams land that we were at for a month or two. And they're going to be able to do this, and that is the point of the assertion. That's the point of the assertion. That's the point of the assertion. Again, my time is over. There was nothing deceitful or dishonest about what she did. That's not the point of the assertion. That's not the point of the assertion. That's not the point of the assertion. Thank you, sir. Good morning, Your Honor. It's George Harris on behalf of defendant appellate Jay Sonderland. I'd like to address first the statute of limitations issue, in particular the effective assistance of counsel issue. It's not contested here that if the request to be made for statute of limitations instructions have been properly raised that the defendants were entitled to instructions that the jury must find specified affirmative acts within the statute of limitations for the tax evasion count and must find an overt act within the statute of limitations for the conspiracy count. He said the jury was allowed to convict based on acts outside of those areas that the contested issues, the contested issues refers. Was this the result of an effective assistance? And two, was it prejudicial? So, first of all, on the effective assistance, if you hear how we can address the non-appeal, it's plain on the face of the record what counsel's reasons were. They were addressed in two supplemental filings as requested by the district court after counsel made an attempt to raise statute of limitations issues in a trial motion, and counsel made it clear that he erroneously believed that it could be raised as a basis for acquittal had he not made the request for jury instruction. That was simply wrong. He had made a Bill 29 motion. He did raise that grounds in his Bill 29 motion for acquittal? Yes. But that was the first time he raised it without raising it? Well, that was the first time, too. Yes. I mean, counsel mentioned in the Bill in particular is the action that he mentioned in the conference on the jury instructions. What he didn't do was actually request an instruction. So the court said, you're slight, you know, you're out of office. Excuse me. Right. The fact that the indictment was literally shuddering, smelting over the axe from the deposits and writing of checks and so on in front of us, the kind of conspiracy that occurred well within statute of limitations, even though the opening of the bank account, I think, it may be 3 or 4 of the first three events of the argument were related to the statute of limitations. I think we need to address the prejudice issue in two parts, in two counts. If I may, I'd address the tax evasion count first. Then I'd count two of those. That's correct. And as earlier in time, there was count two in the indictment. And here the jury was presented with four affirmative acts in two very distinct sets. The evidence was very distinct. The first set had to do with false statements to the IRS as it was made in April of 2005 outside of the limitations period. The second set had to do with actions later in the year, August to December of 2005. And this was, you know, the purchase of automobiles with corporate accounts, the vacation trip, this sort of commingling of corporate and personal. But it was a totally separate set of events. So the jury was allowed to convict. We don't know, you know, what they found. We don't know if they relied on the false statements to the IRS, which were frankly the most direct evidence of negligence. So they don't get a lot of registration. So you and your co-counselor that the jury focused on the actions of false testament and why, as it is after the violation of the CCS were initiated in August of 2005, wouldn't you agree that there were literally harsh records of over-acts that are within this action that occurred? Well, I think, I mean, that's a separate issue. I'm looking at prejudice here, and I'm still having a hard time understanding what you're trying to do in terms of, and that's a perfectly appropriate argument, in terms of segregating the difference in false components of an observable behavior, but in light of the substantial amount of acting activities that occurred, if the jury concluded that those activities were trying to defeat the agency's ability to collect public tax money on the one violation that was initiated. Okay, yeah, well, look, it's not a tax evasion claim, but on a conspiracy claim, yes. I mean, the question is did they find an overt act within that period, or did they only need to find one? They only need to find one, but it can consider all this other conduct under the principles of, I don't know, but, yeah. That's true, Your Honor, but the cases, the controlling precedent here, this is the Yates case and the Fuchs case which follows it, says that, you know, if the jury could find based on action that were inside or outside and we don't know which, that, you know, we need to reverse. We need to go back. Well, and that is the sort of relationship that we have here as a plain error issue, right, on the failure to request the instruction. Well, here's a reasonable probability error. It's also a harmless error because it's really a Chapman standard because under the Hedgepith case, even under Yates, we have to find that beyond a reasonable doubt that it could not have affected it. I think here in Fuchs, of course, the quality of the evidence was not overwhelming, so the question is, was it overwhelming here? I think this is really, this is my colleague's argument in part, but in part because the evidence was not overwhelming with regard to conspiracy and what was really missing here was evidence that just so sharply, that just so sharply knew about the tax liability that was at issue here for the conspiracy. Now, in the third argument, to make the literal language of the argument transpire, she was one of the, I see a little break in the business. She was not in the corporate area of the business, but the taxes that are at issue, the taxes that were owed, the $83,000 that was owed here also then, you know, was back to reverse solve income taxes and this was something that never was on the legal reform of the ordinary. And it has to do, you know, with payments off, the business was still the individual proprietorship. The taxes were paid by the corporation. Those were not owned. And to go back to the, what the argument relies on is what the, one time that the IRS actually had contact with Nistar Network, by the way, was February of 2006, not, well, February of 2005 and here, here's the entire tax recovery of what happened in that meeting. Yeah, I read it, but I didn't find it. Okay. Yeah, I mean, this is, this new section to right here, 156, was basically simulating a good performance in NIST as I'm talking about, it doesn't, it doesn't want to be covered. Yeah, so there's no evidence, but, I mean, given what she did, like, you know, why can't the jury conclude that she, as early as February of 2006, that the IRS corrected taxes and that, you know, all these things that happened with the bank or the, which was the, you know. Well, the argument goes to February of 2005 and then before, anyway, the governor really has to show here that she knew about the taxes that they were trying to collect and that they were trying to collect them while the IRS were open, which means it's not that good, or it's not a good deal. Well, it's just two years before the alleged decay of the insurance, you know, things like that in August of 2008 that the IRS is garnishing the bank account. Well, then she opens a personal corporate account. Okay. And actually, there's no evidence that she knew about the levy on women, once it's found in all of the corporate accounts. This is 2008. Yeah. This is when the real estate business fell apart. This is when all of the, and that's the only explanation for why she's the daughter of a corporate influence. Is that a personal account? Well, yes. And, you know, the object can be $1,400, right, in terms of the object can either be, you know, the object is not the object of tax evasion that's a ledger. And here, the evidence shows that if this is the August 11, August 11, 2008, I mean, the bank account was open, like, within two months. It was a personal levy on the personal account, right, on the corporate women's round of $4,600 or something. Correct. Yeah. And the account's open. But what we don't have is evidence that she knew about that levy. In fact, the government lies on it. The account was just years old. And again, it's that what the real estate firm in this way was looking for was corporate expenses on a personal account. You're having a real problem with the use of the personal account. That's what I think is, it's a really inconvenient fact, in a sense. Well, the evidence also shows that the person, that the corporate account can be used for personal, that they are about $4,600. That was one of her practical accounts that she got. So there's a positive revenue to the business, but I mean, it's a turnabout in the right-hand sense to bring the corporate business back into business. It was not an excuse for a taxpayer. And there was some potential idea that the IRS had grabbed $4,600 from a corporate account two weeks earlier, and she had completely forgotten that the revenue agents had been monitoring on the corporate door in two different ways. Well, again, that's two years before the 19th of February, so you can't know specifically. Ingrid says, he must be, whether it's a non-continuity or not, or whether it's both. So I think the IRS might be on my end, as I see mine. Your client's not there, and I didn't want to get the government involved. Thank you. Good morning, Amanda. Please record your spell for the United States. The jury's verdict in this case should not be overturned, because the district court did not commit any or let alone claim her. We address the statute of limitations issues first. That issue is controlled by the Supreme Court's decision in Passaccio. The defendants did not raise the statute of limitations as an issue before or after trial. Under the Supreme Court's Passaccio decision, that means they are barred from raising it on appeal. It is not, according to the Supreme Court, error at all, let alone claim her. The court apparently does not consider it an effective assistance for counsel when it's on appeal, but if this court were to consider it, this is not a case to reverse, or in fact, the government wins on this issue, because as Judge Holland pointed out, there is simply no prejudice in this case. The counsel either now is barred by the statute of limitations so that even if the defendants have gotten the case they want, they still wouldn't have been convicted anyway. So what was the statute of limitations for? So the statute of limitations for Count 1 I'm sure I have my statute of limitations for Count 1 The conspiracy was charged from August 11, 2008 to August 11, 2009. The statute of limitations began to run on September 8, 2008, so for 29 days outside of the statute of limitations. The only acts that occurred outside of the statute of limitations were the opening of the account. Mr. Soderling's statement that the reason why she opened the account was to avoid the tax slip being imposed by the IRS, which is also evidence that the jury had before them as he explicitly stated that's why he was going to ask her to open the account. And then four direct deposits of less than $10,000 were made into that account. The rest of the $150,000 of deposits and withdrawals that were made into that account all occurred within the limitations period. There were over 70 transactions. In addition, all of the instances in which Ms. Soderling held herself out as the owner of the corporation's assets so that she could auction them off and then take those proceeds and deposit them into her account, all of those auctionings occurred within the limitations period. For Count 2, Count 2 was charged with tax evasion from September 16, 2004 through August 25, 2005. There was a six-year statute of limitations that began to run on September 8, 2005, so approximately one year was outside of the statute of limitations. However, the affirmative acts that were alleged to the indictment began on April 12, 2005. There were four affirmative acts that were alleged to the indictment and the jury was instructed on them. Two of them occurred on April 12, 2005. The remainder of them, the purchasing of Dodge Viper, the vacation, the property sales, all occurred to the most part within the limitations period. Sometimes payments could be made outside the limitations period, but the majority of the payments occurred within the limitations period. And as we pointed out in our brief, there's no way the jury could have found that those payments that occurred within the limitations period were evidence of a tax fraud without also finding that Mr. Sutterling made them his statements on April 12, 2005. They were linked together because the reason why the statements were false was because he told the IRS I don't have any money, when in fact he was using the corporate money as his own personal way to do it. So the supposition that the defense made was that they could have found outside the limitations period act and within the limitations period act is simply not actually possible. Moreover, because of Rosaggio, it doesn't matter. Again, they didn't raise it. With regards to the sufficiency of the evidence, there was sample evidence from which the jury concluded that Mr. Sutterling agreed to defraud the IRS by hiding Mr. Sutterling's assets from the IRS so they could not collect them. First, Mr. Sutterling was an active participant in conspiracy. This is not a case where Mr. Sutterling opened an account in her name and then she didn't know anything about it. She proceeded to write corporate checks in her name as if she was the owner of the corporation which she knew she was not. She held out corporate assets She held herself out as the owner of corporate assets which she knew she did not own. Mr. Sutterling told his accountant, Mr. Bauer, that the purpose of these actions was to avoid any further garnishment of his money by the IRS as direct evidence of his own conspiracy. Mr. Sutterling never told Mr. Bauer to hide what they were doing from Mrs. Sutterling even though she was in the office on a regular basis, not even just on a regular basis. If he was trying to hide the actions of Mrs. Sutterling, he probably would have told Mr. Bauer not to tell him anything about what they were doing. And the service that the IRS levied represented a sea change in how the company did business before that. Mr. Sutterling signed all the checks. Mr. Sutterling was the owner of everything after that. And these actions were not taken in isolation, but after the Sutterlings had been shielding Mr. Sutterling's assets from the IRS since 2002 when Mrs. Sutterling's name was put on the incorporation documents of the non-Mrs. Sutterling's name. During those collection efforts, two revenue agents visited Mrs. Sutterling at her home in 2006. She didn't ask them what they were doing there. She didn't say, why are you here? The jury couldn't infer from that that she already knew why they were there. And when she picked up the phone and called her husband, she didn't ask him what was going on either. And the jury couldn't infer from that that they had already discussed this issue. And this explanation that the defense has now come up with that she opened these accounts to avoid the number of record breakers, that is something that they had brought up for the first time on appeal. There is simply no evidence that was presented to that jury. There was no argument made to the jury that that was why they did it. There are plenty of things that have been offered to the jury. Yes, Your Honor. And below their argument was that they simply didn't conceal anything. Their argument was not. Yes, we concealed it, but we did infer it to them from us. And so for the jury to conclude that, the jury would have had to come up with that option. Are there any further questions? Thank you. Any additional questions? Just to wrap up points briefly, and the first question, did you get into the tax evasion kind of account too, so that each of these are linked to the other and you can find one in front of the other? They're totally separate. The evidence referred to those outside of the jury and it has to do with statements on April 12, 2005 and it was informed into the agent and it had to do with what the assets were and whether certain property sales were disclosed. The later evidence, whether they were corporate accounts used for other purposes, I think is totally separate. So here we're clearly, I think, within the Yates kind of suit situation, where we don't know which is the jury line. I don't know if you have anything to add to that. Mr. Torney, do you want to say anything? Go ahead. Thank you. And so, secondly, do the governor revise any of his tax evasion accounts? I mean, the issue, again, is whether his son really knew. There's only two members of the conspiracy. If she doesn't know, under April, there's not a conspiracy and they rely on the accountant who says, well, I wasn't told not to tell her about the letter. But he also, he never testified that he did tell her or that anyone told him. And there's no evidence that they did. And again, it's not the clearest, not accountable evidence that April required. And then, yes, to the right, there's any evidence of another possible voting here and the fact that there were other creditors out there, and it didn't have to be a tax levy in order to perhaps be doing this. Do you relate to the jury? Yes, and that's what I want to refer you to. But what was the evidence of this, and it was written in 9201, is that Mr. Bauer, the accountant, testified that no one needed to pay the bills to handle them. Employees go. Vehicles didn't need to be repossessed. So there was, if you can just keep a record, that there was also other pressure on these individuals to know this business other than the IRS. So, again, what the government had to prove, and it did not, was that she knew that the purpose was to evade these particular taxes and the collection of them. Thank you very much. Thank you both very much. Sir, I'm afraid if you can introduce this argument, it's a bit of, well, it's a decision, a citizen decision, and it would be
judges: Schroeder, Tallman, Whaley